24  231
47  544
24  231
53  579
24  231
56  535
24  231
61  256

## ROMAINE vs. HENDRICKSON'S EXECUTORS.

1. Interrogatories appended to the bill, and based on the statements and charges therein made, may be regarded as incorporated in the bill, and a prayer for a responsive answer thereto, on oath, is not demurrable.

2. Where a naked power of sale is vested in executors, with no absolute direction to convert, but wholly discretionary, not only as to the time of sale, but as to whether the sale shall ever be made, the land remains land, until the sale actually takes place.

3. Until the sale, where the land is not devised to the executors, the title is in the heirs. And the husband of a daughter of the testator, dying after her father, and before the sale, is entitled to curtesy in her share of the land.

4. Such tenant by the curtesy, and the son of such deceased daughter, to whom her said share of the land descended, subject to the curtesy, are proper parties to a bill against the executors, to set aside a sale of testator's lands, on the ground of fraud, and for a discovery and account.

5. Under a naked power of sale, where the land is not devised to the executors, but till the sale the title is in the heirs, a sale to a pretended purchaser, but really to themselves, is not a conversion of the lands, and does not affect the rights of the heirs.

6. A general demurrer will not lie to a bill, of which there is any part as to relief and discovery, to which the defendant ought to answer.

---

Garret S. Hendrickson, late of the county of Monmouth, deceased, by his will, dated April 16th, 1857, after directing his executors (his wife and two of his sons, Samuel W. Hendrickson and William H. Hendrickson,) to pay his debts and funeral expenses, devised as follows: "It is my will, in case my executors should deem it advisable, for my family to remain on my farm, and to farm the same, and out of the produce of said farm, to pay all expenses of farming said premises, and keeping the same in reasonable repair, and the surplus therefrom to be funds in the hands of my executors, and by them to be paid towards liquidating my debts; and in that case all my moveable property, of whatever kind it may be, to remain in the possession of my wife, for the use and benefit of my family and in farming the premises as aforesaid, during the time that they may farm the same. But in case, at any time, that my executors, or a majority of them, shall deem it more advantageous and beneficial to my family to make sale of my said farm, then I do order and direct my executors to make sale of my said farm and real estate, situate at Deal, in the township of Ocean aforesaid, containing about two hundred and twenty acres, to the best advantage, and to make good and sufficient deed or deeds of conveyance for the same, together with all my moveable property, excepting such and so much of my household and kitchen furniture

as is hereinafter given and bequeathed to my said wife, and out of the same to pay off and discharge all my aforesaid debts and expenses remaining unpaid. It is my will that my executors, after the sale of my real estate, as aforesaid, invest $2000, on good and sufficient security, the interest on the same to be paid yearly, and every year therefrom, to my wife, so long as she remains my widow; also, I give and bequeath to my said wife, so much of the household and kitchen furniture as she may see proper to take, which, together with the principal sum of $2000, above named, to be invested for her, is at her marriage or death to be equally divided between my five children, their heirs and assigns, share and share alike.

"All the rest and residue of my estate, of whatsoever kind it may be, I give and bequeath to my five children, their heirs and assigns, to be equally divided between them, share and share alike, the shares of my three daughters to be invested on good and sufficient security, and the interest thereon to be paid to my wife yearly during her natural life; except in case that either or all of my daughters shall get married, then the sum of $200 to be paid to each of such married ones out of their shares, and my wife only to receive the interest on the balance as aforesaid; and after the decease of my wife, the principal or balance of each share, as the case may be, to be paid to them respectively."

The bill is filed against the three executors by William G. Romaine (by his father and next friend, James H. Romaine,) and said James H. Romaine, on behalf of himself and such other children and devisees of the testator as shall come in and contribute to the expenses of the suit.

The complainant, William G. Romaine, is the infant son of the complainant, James H. Romaine, and Alice his wife, now deceased, who was one of the daughters of the testator.

The bill states that the executors, on the 9th of November, 1867, pretended to sell the farm mentioned in the will, and that it was then struck off to a pretended purchaser, really for the benefit of two of the executors, Samuel and William,

for the nominal price of $53,990, and that the three executors. conveyed the property to the pretended purchaser, accordingly, about the 1st of April, 1868, pretendedly for that consideration, but really without consideration; and by deed of the same date, he, at the same time, conveyed to Samuel and William, each, one-half of the property so pretended to have been sold to him; the consideration in each of the deeds from him, being one-half of the price at which he pretended to purchase the whole property at the executors' sale. The bill charges fraud and collusion on the part of Samuel and William and the pretended purchaser, who is their cousin, and that the object of this sale was to enable the former to get a title to the property for their own benefit. It further states that the property was worth twice as much as the amount at which it was struck off at the executors' sale; and that, immediately after the executors' sale, Samuel and William entered into possession of the property, and have taken the rents and profits ever since, and that, since the conveyance to them, they have sold part of the property, on their own account, for about $80,000, and still hold the rest.

The prayer is, that the three executors may be decreed to execute the trusts of the will; that the executors' sale, as affecting the executors, may be set aside; that Samuel and William may be decreed to hold the parts of the property not yet conveyed away by them, as trustees under the will, in trust for the complainants, and the other *cestuis que trust* named in the will; that they account for the proceeds of the portion of the property they have sold, and be directed to divide and invest the same, as directed by the will; that so much of the farm as Samuel and William still hold, may either be sold under the order of this court, and all proper parties join in the sale, or the value ascertained, and the executors charged with it; or if not, that the executors be decreed to collect the proceeds and yearly profits, and pay one-fifth, after payment of the testator's debts, to the complainant, James H. Romaine, for his.

lifetime; that the executors may be made amenable for the loss which may appear to have been sustained, to the prejudice of the testator's residuary estate, by reason of the executors having refused or neglected to invest the moneys produced by the sales of the land sold and conveyed by Samuel and William, since the conveyance, to them, according to the trusts and directions of the will; and that an account may be taken of the loss and of the profits of the real estate which they have, or ought to have received, and of the personal estate, (which the bill alleges Samuel and William collusively and fraudulently, in like manner, caused to be bid in for them, and for their benefit, at a sale thereof, by the executors,) and of the debts and funeral expenses; and that the same may be paid, if not already paid; and that the clear residuary estate may be ascertained and secured for the benefit of the complainants and all others interested therein; and that the executors may be directed to invest, under the direction of the court, the share of Alice, for the benefit, and in the names of the complainants; and for other and further relief.

The bill prays an answer, on oath, and also responsive answer to interrogatories annexed to the bill.

The defendants demurred, generally, as to the relief, account, and discovery sought by the complainant, James H. Romaine, who sues in his own right; and specially as to the interrogatories annexed to the bill, and to which the defendants are required to make answer, fully, directly, and responsively, confining his, her, or their answers to the interrogatories proposed.

On the hearing, the defendants assigned, ore tenus, another cause of general demurrer, that the complainant, William G. Romaine, has no interest in the suit, or the subject of it, and is entitled to no relief, account, or discovery therein.

*Mr. B. Gummere*, for the demurrer.

*Mr. W. H. Vredenburgh*, for complainants, contra.

· THE. CHANCELLOR.

The demurrer is special and general. The objection to the prayer for answer, on oath, to the interrogatories appended to the bill, is not well taken. Those interrogatories may be regarded as incorporated in the bill. In the prayer for answer, they are referred to. The complainant's right to require a particular answer to particular interrogatories, based on the statements and charges of the bill, is undoubted.

As to so much of the demurrer as goes to the right of the complainants to maintain this suit: It is insisted that the complainant, William G. Romaine, has no interest in the subject of the controversy; and, although his father, James H. Romaine, has an interest, it is as administrator of his late wife, the testator's daughter Alice, which is not the capacity in which he sues.

The position of the defendants' counsel is, that under the will Alice had no title to the lands therein mentioned, except in trust for the purposes declared by the will, which, he insists, are the use of the property by testator's family, as a family, until sale should take · place, and the sale of the property by the executors, and the investment and disposition of the proceeds according to the directions of the will. That therefore the husband of Alice could have no curtesy. That if he had, the bill does not aver seizin of the wife. That the property was, by reason of the direction to convert, from the death of the testator, money, and therefore the husband of Alice is entitled to all of her interest therein, and her child has no interest.

A part of the relief sought by the bill is, that the fraudulent conveyances by and to the executors, as to so much of the land as has not been conveyed to bona fide purchasers, may be set aside, and that that land may either be sold, or the executors decreed to collect the yearly rents and profits of it, and, after payment of the testator's debts, pay one-fifth thereof to the complainant, James H. Romaine, during his lifetime.

On the testator's death the title to the land descended to

his children in equal shares, subject to the disposition made of it by the will for the use of the family as such, and the receipt by the executors of the surplus rents and profits during such use, and to the naked power given to the executors. The power of sale is not one that is to be exercised on the happening of a certain event, or at a given time, but is wholly discretionary, not only as to the time of sale, but as to whether the sale shall ever be made. It may never be exercised. It is a power and not a trust. The land was not devised to the executors; and in the meantime, until the sale, the title is in the heirs, and they have power to transfer their interest in it, at all events, so far as to entitle the alienee to all their rights, whatever disposition should be afterwards made of it. *Den.* v. *Snowhill,* 3 *Zab.* 447; *Den.* v. *Creveling,* 1 *Dutcher* 449; *Herbert* v. *Ex'r of Tuthill, Saxt.* 141; *Gest* v. *Flock,* 1 *Green's Ch.* 108; *Fluke* v. *Fluke's Ex'r,* 1 *C. E. Green* 478.

The husband of Alice was therefore entitled to his curtesy in her share of the land. She was not a mere trustee. The seizin of her co-tenants in common, the occupants of the land, was hers also. The bill states that ever since April 1st, 1868, Samuel and William have been in possession of so much of the land as has not been conveyed away by them. Alice died in 1872. Her seizin appears sufficiently from the statements of the bill. At her death her share descended to her son, subject to her husband's curtesy, and subject also to the power of sale.

The direction to convert not having been absolute, but wholly discretionary, the land was land and not money, until the conversion should actually have taken place. *Gest* v. *Flock, supra; Cook's Ex'r* v. *Cook's Adm'r,* 5 *C. E. Green* 375; 1 *Jarman on Wills* 530.

The fraudulent conveyance by the executors to the pretended purchaser at the sale of April 1st, 1868, cannot, as to so much of the land as has not been conveyed to bona fide purchasers for valuable consideration without notice, be held to be a conversion. It may be set aside by this court. As

to that part of the land the power has not been executed, and this court will treat that part of the land as though the sale had not taken place. As to that land, the husband and heir-at-law of the testator's daughter, Alice, as part owners of the land, have a right to ask that the fraudulent conveyances be set aside. They are proper parties complainant to a bill for such relief, and therefore to this bill. Inasmuch as the conversion has not taken place, the rights of the complainants are not affected by the fraudulent conveyances under which Samuel and William claim to hold the property. They are entitled to be relieved against those conveyances, if the statements of the bill be true, as they must be taken to be, on the consideration of the question raised by the demurrer. They are entitled to the discovery which the bill seeks on that head. It is not an "absolute, certain, clear proposition that the bill would be dismissed with costs at the hearing," but on the other hand, it is clear that if the statements of the bill be sustained, the conveyance from the executors to the purchaser, at their sale, and his conveyances to Samuel and William, would, as to so much of the land as the latter had not conveyed away, be set aside as fraudulent.

There being a part of the bill both as to the relief and discovery, to which the defendants ought to put in an answer, the general demurrer must be overruled.

*Demurrer overruled, with costs.*